IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GEWING BRAND,                          )
                                       )
            Petitioner,                )               4:05cv3194
                                       )
      vs.                              )        MEMORANDUM AND ORDER
                                       )
WILLIAM BILL GIBSON,                   )
                                       )
            Respondent.                )

       This matter is before the court on filing no. 11, the respondent's Motion for Summary

Judgment. The petitioner, Gewing Brand, is presently in the Lincoln Regional Center

("LRC") pursuant to a judgment of commitment on October 2, 2001, that he is mentally ill

and dangerous. After Mr. Brand served prison sentences originating in 1979 on convictions

for sexual assault, the County Attorney for Douglas County, Nebraska initiated an

involuntary mental health commitment of the petitioner under the Nebraska Mental Health

Commitment Act before the Fourth Judicial District (Douglas County) Mental Health Board.

The petitioner states that he has been in custody of one kind or another for approximately

27 years on account of two sexual assaults that he did not commit.

       Furthermore, the petitioner asserts that he was not mentally ill and dangerous when

involuntarily committed, and, even if he was, he is not mentally ill or dangerous today.

Finally, the petitioner states that if he cannot be released entirely from the LRC, he

believes he is entitled to a less restrictive custodial setting such as a transfer from the

inpatient Mental Health Unit to the Community Transition Program.  He used to be allowed

to take walks and work in the community while at the Norfolk and Hastings Regional

Centers, and he never abused the privilege or committed any offenses or infractions. He

deeply misses the outdoors, the freedom to work, and recreational activities such as bowling.

Liberally construed, Mr. Brand's Petition for Writ of Habeas Corpus, read together with his accompanying letter to the court (filing nos. 1-1 and 1-2), assert claims which can be divided into three categories. Some of those claims remain actionable but will have to be brought in different lawsuits, and one is barred, all are discussed in greater detail below.

To answer a question posed by the petitioner, if he does bring lawsuits to assert his actionable claims, he will be able to do so at no cost if his finances remain comparable to his present circumstances. The petitioner states in filing no.1-2 that he has no job or outside funding. Therefore, he would qualify to proceed in forma pauperis ("IFP") in habeas corpus or civil rights litigation based on the matters discussed in this Memorandum and Order. The petitioner is not considered a "prisoner" because the definition of "prisoner" in the Prison Litigation Reform Act does not include a person subject to an involuntary mental health commitment. See, e.g., Kolocotronis v. Morgan, 247 F.3d 726, 728 (8th Cir. 2001). When an application for leave to proceed IFP is granted to a habeas petitioner or to a nonprisoner plaintiff who files a civil rights complaint, the filing fee is entirely waived.

### Applicable Law: General Principles

This case demonstrates the difficulties of explaining to a confined person precisely which claims must be brought in a habeas corpus action, and which may be presented in a civil rights action pursuant to 42 U.S.C. § 1983. The distinction is important because It is a cardinal principle of federal habeas corpus law that a habeas claim must have been fairly presented to, i.e., "exhausted" in, the state district and appellate courts before the

2

claim reaches a federal district court in a habeas corpus petition.

Release from Custody

Release from custody is the exclusive province of a habeas corpus action. Wilkinson v. Dotson, 125 S. Ct. 1242 (2005).

During the entire period of his commitment, the petitioner is entitled to ongoing reviews and other protections to ensure that the State remains empowered to detain him. In Foucha v. Louisiana, 504 U.S. 71 (1992), for example, the U.S. Supreme Court clarified that an insanity acquittee has an ongoing right to due process procedures adequate to ensure his release once the acquittee is either no longer dangerous or no longer mentally ill. Id. at 77-83. Also, a four-Justice plurality of the Court considered that, as a matter of equal protection, an insanity acquittee who has recovered his sanity must be released just as any other person subject to an involuntary civil commitment would be entitled to release in such circumstances. Id. at 86.

Conditions of Confinement

On the other hand, if total release from custody is not placed at issue, Mr. Brand may maintain an action pursuant to 42 U.S.C. § 1983 to challenge conditions of his confinement, including the propriety of inpatient treatment as opposed to some other less restrictive form of confinement consistent with his condition. The remedy of total release from state custody must be litigated in a habeas corpus proceeding, but conditions of confinement including the issue of a less restrictive custodial setting may be addressed in a civil rights action.

A committed person has rights which he may assert in civil rights litigation pursuant

3

to 42 U.S.C. § 1983.  In <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982), the Supreme Court held that a committed individual "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."  <u>Id</u>. at 324.  The Eighth Amendment "deliberate indifference" standard applied to convicted prisoners is a *minimum* standard of culpability.  <u>Dolihite v. Maughon By and Through Videon</u>, 74 F.3d 1027, 1041 (11th Cir. 1996).  "[P]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  <u>Youngberg v. Romeo</u>, 457 U.S. at 321-22.  Also, "[w]hen a person is institutionalized-and wholly dependent on the State-it is conceded by [the State] that a duty to provide certain services and care does exist, although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities."  <u>Id</u>. at 315.  Thus, a state bears responsibility for providing services, at least to some degree, to involuntarily committed psychiatric patients.   The state may not simply "warehouse" the petitioner; he is entitled to appropriate services, support and care.

A petitioner may not seek damages from a state because monetary relief implicates the state's sovereign immunity.[1]  On the other hand, the doctrine of <u>Ex Parte Young</u>, 209 U.S. 123 (1908), holds that the Eleventh Amendment to the U.S. Constitution does not bar suits for prospective injunctive relief against state officials in their official capacity.   A suit to enjoin state officials in their official capacity may proceed if the complaint alleges an

---

[1]"States and state officers acting in their official capacity are immune from suits for damages in federal court."  <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources</u>, 532 U.S. 598, 609 (2001), *citing* <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).

ongoing violation of federal law and seeks relief properly characterized as prospective, although a declaratory judgment establishing past liability of the state is nevertheless forbidden by the Eleventh Amendment.  Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).   So Mr. Brand's claim that he should no longer be subject to inpatient residential treatment and that he is entitled to a less restrictive form of confinement may be brought in a civil rights action seeking injunctive relief against individual named state officials pursuant to 42 U.S.C. § 1983.

### Petitioner's First Type of Claim:
## CLAIM THAT THE PETITIONER WAS WRONGFULLY CONVICTED AND SENTENCED FOR SEXUAL ASSAULT IN 1984 AND/OR 1979

The petitioner may not directly or indirectly litigate the validity of his original criminal convictions in 1979 and 1984 because the statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and codified at 28 U.S.C. § 2244(d) has expired.   Once the statute of limitations has run, it cannot be reset, restarted, tolled or reopened for purposes of bringing a habeas corpus case in federal court.   Thus, the first type of claim that the petitioner asserts is barred by the habeas corpus statute of limitations.[2]   That claim will be dismissed with prejudice.

### Petitioner's Second Type of Claim:
## CLAIM THAT THE PETITIONER IS NO LONGER MENTALLY ILL AND DANGEROUS AND SHOULD THEREFORE BE RELEASED ENTIRELY FROM STATE CUSTODY

As stated, release may be addressed only in a habeas corpus proceeding after exhaustion of state court remedies.  Under the Nebraska Mental Health Commitment Act,

---

[2]In addition, it appears that the Eighth Circuit Court of Appeals has already affirmed the denial of habeas relief regarding the petitioner's 1984 conviction.  See Brand v. Hopkins, 52 F3d 330, 1995 WL 2360009 (8th Cir. 1995).

Neb. Rev. Stat. §§ 71-901 to 71-962, an involuntarily committed patient may request a review hearing.  Neb. Rev. Stat. § 71-935.  In the alternative, a patient may, but is not required to, seek a writ of habeas corpus in a state court.  In re Interest of Powers, 493 N.W.2d 166, 168-69 (Neb. 1992).  Neb. Rev. Stat. § 71-935 (previously § 83-1046) of the Mental Health Commitment Act directs the pertinent mental health board to hold a review hearing as follows:

> Upon the filing of a periodic report under section 71-932, the subject, the subject's counsel, or the subject's legal guardian or conservator, if any, may request and shall be entitled to a review hearing by the mental health board and to seek from the board an order of discharge from commitment or a change in treatment ordered by the board. The mental health board shall schedule the review hearing no later than fourteen calendar days after receipt of such request. The mental health board may schedule a review hearing (a) at any time pursuant to section 71-937 or 71-938, (b) upon the request of the subject, the subject's counsel, the subject's legal guardian or conservator, if any, the county attorney, the official, agency, or other person or entity designated by the mental health board under section 71-931 to prepare and oversee the subject's individualized treatment plan, or the mental health professional directly involved in implementing such plan, or (c) upon the board's own motion.

Whether he seeks a review hearing before the Mental Health Board or a writ of habeas corpus in state court, the petitioner must invoke the appropriate appeal procedures if he does not obtain the relief he seeks.  If he moves for a review hearing before the Mental Health Board, the Board's decision, if unsatisfactory to the petitioner, must be appealed to the District Court, then to the Nebraska Court of Appeals, followed by a petition for further review in the Nebraska Supreme Court. Then the decision will be "exhausted" and may be the subject of a habeas corpus petition in this court.  In the alternative, if the petitioner decides to seek a writ of habeas corpus in the Lancaster County District Court, and if the writ is denied, he must appeal to the Nebraska Court of

6

Appeals, followed by a petition for further review in the Nebraska Supreme Court. Thereafter, he may come to this court.  The point of "exhaustion" is that each level of the Nebraska state court system (District Court, Court of Appeals and Nebraska Supreme Court) must have an opportunity to hear the petitioner's claims before he may file a petition for a writ of habeas corpus in federal district court.

Because the state appellate courts have not yet had that opportunity, the petitioner's claims that he should be released from state custody as he is no longer mentally ill or dangerous must be dismissed, without prejudice, so that he may exhaust his remedies **either** before the Mental Health Board or in a state court habeas case, and in either event entirely through the Nebraska appellate courts.  See, e.g., Neb. Rev. Stat. § 71-930 of the Mental Health Commitment Act, entitled "Treatment order of mental health board; appeal; final order of district court; appeal," which explains how to appeal a decision by a mental health board:

> The subject of a petition or the county attorney may appeal a treatment order of the mental health board under section 71-925 to the district court. Such appeals shall be de novo on the record. **A final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in criminal cases.** The final judgment of the court shall be certified to and become a part of the records of the mental health board with respect to the subject.

(Emphasis added.)

### Petitioner's Third Type of Claim:
### CLAIM THAT THE PETITIONER'S CONDITIONS OF CONFINEMENT VIOLATE THE U.S. CONSTITUTION, AND THAT HE IS ENTITLED TO IMPROVED SERVICES AND A LESS RESTRICTIVE CUSTODIAL SETTING

The petitioner asserts that he no longer requires inpatient treatment.  He believes that he is not receiving appropriate treatment, support and services to enable him to reside

in the least restrictive available setting appropriate for his present condition, and that the persons responsible for his treatment at the LRC are presently violating his right to due process. A claim of that kind, challenging the petitioner's conditions of confinement, may be brought by a complaint pursuant to 42 U.S.C. § 1983, and without cost if accompanied by an application to proceed IFP.

Therefore, insofar as the petitioner asserts a challenge to the conditions of his confinement because they are unduly restrictive, and because he should be permitted to progress to a transition program and be allowed community outings and a job, those claims are not barred. However, the conditions of confinement claims will be dismissed without prejudice so that the petitioner may bring them in a civil rights complaint pursuant to 42 U.S.C. § 1983.

THEREFORE, IT IS ORDERED:

1.      That filing no. 11, the respondent's Motion for Summary Judgment, is granted insofar as the Motion is consistent with this Memorandum and Order, and filing no. 11 is otherwise denied; and

2.      That a separate judgment will be entered accordingly.

DATED this 17th day of July, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge